**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IRA E. COUCH,

      Plaintiff,

      v.

WELLPATH LLC, WEXFORD HEALTH
SOURCES, INC., KARA PHILIP, TIFFANY
LAKE-LUCKETT, LESLIE WILKING, and
WILL COUNTY SHERIFF'S OFFICE,

      Defendants.

No. 25 CV 1447

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ira E. Couch IV was incarcerated in July 2024, just before he could receive necessary surgery to correct a stoma arising from a gunshot wound he suffered six months prior. While incarcerated first at the Will County Adult Detention Facility and later in Illinois prisons, he was denied the stoma reversal surgery despite repeated requests, extensive pain, and his exposed intestine, which necessitated the use of a colostomy bag. After months of being denied treatment, Couch sued pro se, and this Court later appointed him counsel.

In his second amended complaint, Couch brings claims via 42 U.S.C. § 1983 of deliberate indifference under the Eighth and Fourteenth Amendments and state law claims of medical malpractice and, in the alternative, ordinary negligence against a total of seven defendants: Will County Sheriff's Office; Wellpath LLC, the healthcare provider for the county jail system; Wellpath nurses Tiffany Lake-Luckett and Kara Phillips; Wellpath director Leslie Wilking; the Illinois Department of Corrections

(IDOC); and Wexford Health Sources, Inc., the former healthcare provider for IDOC. [68].

Will County Sheriff's Office, Wexford, and IDOC each moved individually to dismiss all claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [70], [73], [87]. For the reasons explained below, IDOC's motion is denied as moot, and Will County Sheriff's Office's and Wexford's motions are granted in part and denied in part.

## I.    Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint only needs to include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). On a motion to dismiss for failure to state a claim, the court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016). But the court need not credit legal conclusions or "threadbare recitals" supported by "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018).

2

## II.      Background

The Court takes the following relevant facts from Couch's second amended complaint [68], accepting all well-pleaded facts as true and making all possible inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Ira E. Couch IV suffered a gunshot wound in December 2023. [68] ¶ 17. Dr. Manuel Corrales first treated Couch in an emergency room, in part by sewing his intestine, which had been exposed by the gunshot wound, to his body. *Id.* Couch thereafter needed to use a colostomy bag. *Id.* Dr. Corrales advised Couch that if his wound had not healed on its own within six months, Couch should undergo stoma reversal surgery. *Id.* ¶ 18. When the wound had not healed after six months, Couch scheduled the stoma reversal surgery with a different physician. *Id.* ¶¶ 19–20.

Unfortunately, Couch was incarcerated at the Will County Adult Detention Facility (the "Will County Facility") shortly before he was scheduled to receive this surgery. *Id.* ¶ 21. He remained at the Will County Facility from July 2024 through March 2025. *Id.* ¶¶ 21, 41. Throughout his time in the Will County Facility, Couch repeatedly requested to see a doctor, review his medical records, and have his surgery—all to no avail. *Id.* ¶¶ 22–27; 33–34; 36; 39; 41. In October 2024, Couch was told that Wellpath, which provided medical services at the Will County Facility, would begin charging him $7.50 per medical request "because getting a stoma reversal surgery would not be possible at the [Will County] [F]acility and he was not allowed to go to an outside hospital." *Id.* ¶¶ 24, 34. Meanwhile, Couch's exposed intestine was vulnerable to infection. *Id.* ¶ 28. Couch also feared that his colostomy

3

bag would break—if, for example, Couch accidentally rolled over in his sleep—which would leave Couch covered in his own feces. *Id.* ¶ 29. He experienced recurrent pain, fear of infection, and humiliation, which contributed to severe depression. *Id.* ¶¶ 30–31, 38. With his requests for appropriate medical attention repeatedly refused, and seeing no other options, Couch filed his original lawsuit on February 5, 2025. *Id.* ¶ 39.

In March 2025, Couch moved into the custody of IDOC, where Wexford was the medical provider. *Id.* ¶¶ 41, 43. At Stateville Correctional Center, he finally saw a doctor, who said that Couch could have his surgery. *Id.* ¶ 42. But later that month, Couch was transferred to a different IDOC facility, Robinson Correctional Center, located 200 miles away. *Id.* ¶ 43. There, Couch "had to re-start the process of requesting medical treatment." *Id.* The process did not go well: Couch was unable to see a doctor or schedule his surgery; in the meantime, his physical pain and mental suffering persisted. *Id.* ¶¶ 45–47.

For the remainder of the time that Wexford was the medical provider at IDOC,[1] Couch was not allowed to see a doctor or undergo surgery. *Id.* ¶¶ 48–49. After

---

[1] The Court takes judicial notice of the fact that Wexford's contract with IDOC expired on July 30, 2025, and was not renewed. *See* Illinois Dep't of Corrections, Director Latoya Hughes, Memorandum: Update on Transition of Comprehensive Healthcare Services Provider (July 24, 2025), available at https://idoc.illinois.gov/content/dam/soi/en/web/idoc/news/memostopopulation/7.24.25-Updated-Transition-of-Comprehensive-Healthcare-Services-Provider-memo-individuals.pdf; Fed. R. Evid. 201(b)(2), (c)(1) (explaining that courts may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see, e.g., United States v. Illinois*, 795 F. Supp. 3d 1057, 1065 n.1 (N.D. Ill. 2025) (taking judicial notice of material available on the Illinois Department of Labor website).

speaking with other inmates, Couch formed the understanding that Wexford had a policy preventing inmates from receiving medical care or, at the very least, from receiving stoma reversal surgeries. *Id.* ¶ 47. Shortly after Wexford's contract with IDOC lapsed, Couch scheduled an appointment with a doctor. *Id.* ¶ 49.

## III.  Analysis

### A.  Deliberate Indifference to Serious Medical Needs by Will County Sheriff's Office (Fourteenth Amendment) and Wexford (Eighth Amendment) (Counts I and III)[2]

#### 1.  Viability of § 1983 Claim Against Will County Sheriff's Office

The Court first addresses Will County's argument that Couch cannot sue Will County Sheriff's Office as such, because the proper defendant is the sheriff himself or another individual in the office. [70] at 3. The propriety of suing Will County Sheriff's Office as a governmental institution turns on whether it is a division of the state under Illinois law. "The United States Supreme Court has instructed that local government liability under § 1983 'is dependent on an analysis of state law.'" *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (quoting *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997)). In Illinois, the sheriff is an elected official of the county, not the state, and functions as an officer of the county when managing jails. *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 975–77 (7th Cir. 2000). Illinois sheriffs thus do not enjoy Eleventh Amendment immunity to § 1983 liability.

---

[2] Couch's complaint asserts an Eighth Amendment claim against the Will County Sheriff's Office. Yet pretrial detainees cannot invoke the Eighth Amendment, so the Court considers it under the Fourteenth Amendment. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). Medical care claims by pretrial detainees are typically assessed under the Eighth Amendment's standards, and the Court does so here. *Id.* at 350–51.

*Id.*; *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000); *see also Hower v. Cook Cnty. Sheriff's Off.*, No. 15 C 6404, 2016 WL 612862, at *2 (N.D. Ill. Feb. 16, 2016) (an Illinois sheriff's office is a suable entity).[3]

It is true that § 1983 claims based on mistreatment in county jails, like Couch's, typically name the sheriff in his official capacity rather than the sheriff's office per se. This type of *Ex Parte Young* pleading is necessary in states where the sheriff's office is not considered a separate legal entity from the county it serves. *See, e.g., Whiting v. Marathon Cnty. Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir. 2004) (noting that a Wisconsin sheriff's department is not a legal entity separable from the county government which it serves). But because Illinois sheriffs' offices have a distinct legal identity from their counties, they are suable in their own right. *See DeGenova*, 209 F.3d at 977, n.2.

The Seventh Circuit and the Northern District of Illinois routinely allow § 1983 cases brought against Illinois sheriff's offices or departments, as such, to proceed. *See, e.g., Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 927 (7th Cir. 2025); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305–306 (7th Cir. 2010); *Bless v. Cook Cnty. Sheriff's Off.*, No. 13-CV-4271, 2016 WL 958554, at *6–8 (N.D. Ill. Mar. 8, 2016).[4] The

---

[3] Will County Sheriff's Office correctly states that the court in *Hower* dismissed § 1983 claims against the Cook County Sheriff's Office. But the court dismissed the § 1983 claims for failure to state a *Monell* claim, not because the Sheriff's Office was an improper defendant. *Hower*, 2016 WL 612862, at *2.

[4] Will County Sheriff's Office cites *Ulery v. DeLacy* for the proposition that it is not a proper defendant under § 1983, because the court in *Ulery* said in a footnote that the Winnebago County Sheriff's Office was not a proper defendant and substituted the Winnebago County Sheriff. *Ulery v. DeLacy*, No. 20-CV-50477, 2025 WL 1079481, at *4 n.5 (N.D. Ill. Apr. 10, 2025). However, the cases *Ulery* cited for that proposition include one case involving a police

6

Court is thus not persuaded that Couch's claim against Will County Sheriff's Office must fail because he named the Sheriff's Office rather than the Sheriff in his official capacity. *See Thomas*, 604 F.3d at 305 (rejecting argument that the law "requires individual officer liability before a municipality can ever be held liable for damages" and, in so doing, recognizing that a plaintiff might only sue a county for deliberate indifference).

### 2. *Monell* Claims

While it may be legally permissible, by naming Will County Sheriff's Office rather than an individual officer as a plaintiff, Couch has given himself a higher bar to clear.[5] Because Will County Sheriff's Office is a municipal entity, any § 1983 claim against it must pass muster according to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Thomas*, 604 F. 3d at 305–306 (liability of individual officers in a sheriff's department could not be imputed to the sheriff's department as a defendant in its official capacity; to hold the sheriff's department liable, plaintiff had to show the department had a policy or practice that contributed to his injuries).

---

department in Indiana, another involving a sheriff's office in Wisconsin, and a third where the plaintiff named the Illinois jail as a defendant. *Ulery*, 2025 WL 1079481, at *4 n.5. Because the Court uses Illinois law to determine the suitability of Will County Sheriff's Office as a defendant, that footnote is not persuasive. [70] at 3.

[5] Couch's response to Will County's motion to dismiss gestures towards an argument that he meant to name the Sheriff in his individual capacity or unknown individual officers of Will County Sheriff's Office rather than, or in addition to, the Sheriff's Office as an institution. [92] at 9–10 (for example, arguing that "Mr. Couch has sufficiently pleaded personal involvement"). But his second amended complaint clearly and repeatedly identifies Will County Sheriff's Office and the Will County Facility as a source of his injury, not an unnamed individual agent thereof. *See* [68] ¶¶ 9; 24; 39; *c.f. Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1076 (N.D. Ill. 2014) (allowing case to move forward against "Unknown District 214 Employees" when plaintiff's complaint alleged that "unknown officers or agents of the District violated Plaintiff's right to due process").

The same is true of Couch's constitutional claims against Wexford. Because Wexford is "a private corporation that has contracted to provide essential government services—in this case, health care for prisoners," it "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

To state a *Monell* claim against either defendant, Couch must plausibly allege that the defendant had an unconstitutional policy or practice, which can take three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Palmer v. Marion Cnty.*, 327 F.3d 588, 595 (7th Cir. 2003) (quoting *Garrison v. Burke*, 165 F.3d 565, 571–72 (7th Cir. 1999)). As Couch does not allege that Will County Sheriff's Office or Wexford had an express policy against allowing inmates to undergo essential stoma reversal surgery, and does not identify any person with final policy-making authority who blocked him from surgery, his claim follows the second avenue: a widespread practice that, although not authorized by written law or express policy, is so well-established that it takes on the force of law.

Many courts have considered complaints in this vein; it is routine for prisoners to request medical care that they believe is essential and be turned down by jails, prisons, and their contracted medical providers. The key aspect of a successful *Monell*

8

claim at the complaint stage is a plausible allegation of a widespread practice that has the force of law—one that extends beyond an isolated denial of care, however harmful. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008).

The Seventh Circuit has not adopted a bright-line rule as to the number or severity of instances of deliberate indifference to prisoners' health that a plaintiff must set forth to sufficiently allege a pattern or practice. *Haywood v. Wexford Health Sources*, No. 16-CV-3566, 2017 WL 3168996, at *3 (N.D. Ill. July 26, 2017) (citing *Thomas*, 604 F.3d at 303). "However, it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieveson*, 538 F.3d at 774 (internal citations omitted). While complaints that include facts pertaining to multiple inmates are more persuasive that a pattern exists, "[t]here are many … examples where incarcerated plaintiffs have adequately pleaded *Monell* liability alleging only their individual experiences." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) (collecting cases at n.1).

One such example can be found in *Harris v. Dart*, No. 20 C 7602, 2023 WL 2988816, at *4 (N.D. Ill. Apr. 18, 2023). There, the district court denied a motion to dismiss a complaint alleging that Harris received inadequate care for his prosthetic leg in pretrial detention over a period of two years. *Id.* Harris complained to jail staff and medical staff alike, who indicated to him that the care he needed was too expensive. *Id.* The court allowed Harris's claim to move forward because he included "specific allegations of various County employees' indifference to his medical needs

9

over a more than two year period of time" and staff's acknowledgements that the cost of the appropriate care prevented the County from addressing his medical needs "suggests that the County maintained a cost-cutting policy that prevented him from receiving needed medical care." *Id.*

Similarly, the plaintiff in *Haywood* succeeded in alleging that Wexford had a policy of inadequate mental health treatment when he alleged with specificity that eleven different Wexford employees failed to respond to his mental illness and retaliated against him for seeking mental health care. 2017 WL 3168996 at *4. Those specific facts supported his claim that his mistreatment was a result of Wexford policy. *Id.*

Another plaintiff successfully pleaded a *Monell* claim by alleging that Wexford denied him treatment for almost two months after he suffered a serious arm injury and repeatedly ignored subsequent requests for treatment while the arm injury worsened over another eight months. *Baker v. Wexford Health Sources, Inc.*, No. 13 C 50193, 2014 WL 1346613, at *1–2 (N.D. Ill. Apr. 4, 2014). *Baker* determined that the facts the plaintiff stated about his own treatment supported his allegation of a policy or practice at an institutional level. *Id.* at *5; *see also Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, *6 (N.D. Ill. June 29, 2013) ("allegations of routine delays and denials of medical care and nonresponsiveness to requests for care, combined with ... specific factual allegations regarding how [the plaintiff] was dealt with ... are sufficient to state claims under *Monell*.").

Like the above cases, Couch only discusses particulars specific to his own experiences. As the Court explains next, when coupled with his allegation of a wider practice, Couch successfully states a *Monell* claim against Will County Sheriff's Office and Wexford, respectively.

### a. Will County Sheriff's Office

To successfully bring a claim against Will County Sheriff's Office, Couch must allege a pattern or practice that caused his constitutional injury with enough specificity to put the Sheriff's Office on notice. His description of his treatment (or lack thereof) at the Will County Facility does so.

Much like the plaintiffs in the cases above, Couch provides specific examples of treatment throughout his eight months at the Will County Facility. When he was first incarcerated, he had already received confirmation from two doctors that he would need surgery to correct his stoma. [68] ¶¶ 18–20. He immediately began requesting that the Will County Facility allow him to see a doctor and receive his surgery. *Id.* ¶ 22. He continued to complain of his stoma, made requests to see a doctor, and made requests to see his medical records, and he directed these requests and complaints to multiple employees of both the Will County Facility and its medical-services provider Wellpath, all to no avail. *Id.* ¶¶ 23–27; 33–37; 39; 41. He found himself stuck in a Kafkaesque cycle of denials, with the Will County Facility and Wellpath denying his requests for surgery offsite and, at the same time, claiming that it would be impossible to perform the surgery onsite. *Id.* ¶¶ 34, 37. A state-court judge's statement directing the Will County Facility to address his medical needs made no difference. *Id.* ¶ 26. Couch never received his surgery or his medical records

11

before being transferred out of the Will County Facility, despite consistent requests throughout his time and severe, visible medical need. *Id.* ¶¶ 29–31, 41.

At this stage in litigation, the Court views all facts in the light most favorable to Couch and draws all reasonable inferences in his favor. *Kubiak*, 810 F.3d at 480. In doing so, it accepts Couch's allegation that "[Will County Sheriff's Office's] refusal to treat Plaintiff was … evidence of an underlying policy or widespread custom of refusing to treat inmates in need of medical treatment, specifically those with colostomy bags." [68] ¶ 55. Couch is required to plead facts that provide Will County Sheriff's Office with adequate notice of the claim he is bringing against it and that assert a plausible claim for relief; he is not required at this stage to show evidence that proves his claim. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) ("[T]he City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims."). Couch has met his burden. He has made extensive and specific allegations of indifference to his medical needs by employees at the Will County Facility over the course of eight months. Because these contentions plausibly set forth a widespread practice, and not an isolated event, Couch has sufficiently alleged a *Monell* claim against the Will County Sheriff's Office. *See Harris*, 2023 WL 2988816 at *4.

Of course, as Couch himself acknowledges, discovery may reveal that Wellpath's policy alone prevented Couch from receiving appropriate medical care.

12

That possibility does not defeat Couch's complaint at this stage. Couch has done enough in his Second Amended Complaint to state a § 1983 claim against Will County Sheriff's Office, and he is entitled to move forward.

### b. Wexford

Couch's claims against Wexford are premised on facts that occurred once he was transferred to the care of the IDOC in March 2025, but the analysis of his *Monell* claim against Wexford is much the same.

Wexford repeatedly ignored Couch's requests for the stoma removal surgery from March 2025 until its contract with IDOC elapsed on July 30, 2025. [68] ¶¶ 43–46, 48; *see supra* at note 1. In addition, upon speaking with fellow IDOC inmates, Couch formed an impression that "Wexford Health had a policy of preventing inmates from being able to receive medical care" and that "at a minimum, it was clear that Wexford Health had a policy of deeming stoma-reversal surgeries unnecessary." *Id.* ¶ 47. The Court reasonably infers from these allegations that other inmates noticed and/or experienced Wexford's reticence to provide necessary medical care. That supports Couch's allegation that Wexford's repeated denial of his care was indeed part of a policy or practice supporting *Monell* liability. *See Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2016 WL 1056661 *3 (N.D. Ill. Mar. 17, 2016) (plaintiff's statement that Wexford "maintains cost-cutting and other policies that prevented inmates like plaintiff from receiving adequate medical treatment" invoked other inmates, suggesting that his experience was not an isolated incident).

Additionally, Couch was able to schedule an appointment with a doctor sometime between July 30 (the end of Wexford's IDOC contract) and September 10,

13

2025, which Wexford had denied him for four months. [68] ¶ 49. That timeline further supports an inference that it was Wexford's policy that prevented Couch from seeing a doctor rather than his level of medical need. *Contra* [74] at 7 (Wexford argues that Couch has failed to sufficiently allege a policy that was "the moving force behind his constitutional deprivation").

Wexford's cited cases are not persuasive. It first relies on *Minix v. Canarecci*, where the Seventh Circuit affirmed a grant of summary judgment in a case where the plaintiff failed to produce sufficient evidence showing deliberate indifference. 597 F.3d 824, 832 (7th Cir. 2010). The standard for stating a plausible claim is much lower than the one for surviving summary judgment; summary judgment requires the nonmoving party to present evidence supporting the position that a jury could find in his favor, while at the complaint stage the plaintiff must simply state a claim of relief that is plausible on its face. *Compare Cole*, 634 F.3d at 903, *with Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Wexford also raises multiple cases where the plaintiff alleged just one instance of inadequate care and thus did not state facts rendering a claim of a policy or practice plausible. For example, in *Sharif v. Ghosh*, another judge in this District dismissed a complaint against the then-CEO of Wexford in his official capacity because plaintiff's allegation—that the treatment he received for his injured knee was inadequate because Wexford physicians did not refer him for surgery—was insufficient to state a *Monell* claim. No. 12 C 2309, 2013 WL 228239, at \*6 (N.D. Ill. Jan. 18, 2013); *see also Arita v. Wexford Health Sources, Inc.*, No. 15-CV-01173, 2016 WL 6432578, at \*3

14

(N.D. Ill. Oct. 31, 2016) (plaintiff failed to plausibly allege a policy or practice with a "factually unsupported, boilerplate allegation" based on "one instance of delayed medical treatment."). Wexford cites many other cases standing for the proposition that courts cannot credit conclusory allegations of a policy or practice when assessing a Rule 12(b)(6) motion to dismiss a *Monell* claim. *See, e.g., Hogue v. Varga*, No. 3:19-CV-50151, 2021 WL 1020988, at *6 (N.D. Ill. Mar. 17, 2021) (plaintiff did not state a claim against Wexford for wrongfully denying him disability accommodations when the facts pleaded indicated it was prison officials, not Wexford, who denied the accommodations); *Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014) ("A plaintiff alleging a widespread practice must plead facts that show that there is a true municipal policy at issue, not a random event"); *DiMaio v. Wexford Health Sources, Inc.*, No. 19-CV-06613, 2021 WL 1056848, at *4 (N.D. Ill. Mar. 19, 2021) (same); *Randle v. Nicholson*, No. 18 C 7890, 2020 WL 7319572, at *4 (N.D. Ill. Dec. 11, 2020) (same); *Peacock v. Rigsby*, No. 15 C 1884, 2016 WL 1383232, at *3 (N.D. Ill. Apr. 7, 2016) (plaintiff did not assert facts rendering the existence of a cost-cutting policy plausible).

In contrast to those cases, Couch's complaint alleges facts supporting his allegation that Wexford has a policy or practice of denying medical care to inmates who need stoma reversal surgery. His allegation of a policy or practice thus goes beyond conclusory legal boilerplate. And while Couch states only specific facts about how his own pleas, not others', were ignored, the facts alleged nevertheless indicate an egregious refusal of care by Wexford over a four-month period—during which time

15

Couch repeatedly sought medical attention—followed by an almost immediate about-face by Wexford's successor. Those facts, coupled with Couch's allegation of a policy or practice based on his conversations with fellow inmates, are sufficient to state a claim.

Wexford also cites *Jones v. Feinerman*, which found that "Jones's allegations are insufficient, because they are limited only to him, and do not represent a pattern of deliberate indifference to multiple inmates across the facilities where he was incarcerated." No. 09 C 03916, 2011 WL 4501405, at *6 (N.D. Ill. Sept. 28, 2011). *Jones* was decided before the Seventh Circuit clarified that § 1983 claimants are "not required to identify every other or even one other individual" who was harmed by a suspected unconstitutional pattern or practice when stating a *Monell* claim. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016); *see also Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims similarly have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff") (collecting cases).

Discovery will reveal whether Couch can prove that Wexford maintained an unconstitutional de facto policy. It is enough at this stage to allege that such a policy exists, with specific facts to render it plausible (not probable). *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement.'") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2009)). Wexford's motion to dismiss Couch's § 1983 claim against it is thus denied.

16

**B.    State Law Claims for Medical Malpractice (Counts IV and V) and Negligence (Counts VI and VII)**

Will County Sheriff's Office and Wexford each move to dismiss Couch's state law claims of medical malpractice and negligence against them. As the two defendants are differently situated, the Court discusses them separately.

### 1.    Will County Sheriff's Office

Couch presents a claim under Illinois law that Will County Sheriff's Office committed medical malpractice by failing to grant his requests to see a doctor, review his medical records, or get surgery to correct his stoma. [68] ¶ 75. The elements of a medical malpractice claim in Illinois are "(1) the proper standard of care against which the defendant's conduct is measured; (2) an unskilled or negligent failure to comply with the applicable standard; and (3) a resulting injury proximately caused by the defendant[']s want of skill or care." *Morisch v. United States*, 653 F.3d 522, 531 (7th Cir. 2011) (quoting *Petre v. Cardiovascular Consultants,* 373 Ill. App. 3d 929, 871 N.E.2d 780, 790 (2007)).

Will County Sheriff's Office argues that it is not a physician or medical provider and thus cannot be liable for medical malpractice. [70] at 6. The Court agrees that medical malpractice is an improper claim, but for a different reason: medical malpractice suits are appropriate when "a professional applies his expert knowledge or skill in an unreasonably deficient way resulting in injury." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *4 (N.D. Ill. Apr. 9, 2012) (citing care *Purtill v. Hess*, 111 Ill. 2d 229, 241–42, 489 N.E.2d 867, 872 (1986)). Under the standard of care in a medical malpractice case, professionals "are expected to use the same degree of

17

knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 295, 730 N.E.2d 1119, 1130 (2000). In contrast, "Illinois law requires that jailers 'exercise ordinary and reasonable care for the preservation of prisoners' health and life under the circumstances of the particular case.'" *Warren ex rel. Warren v. Dart*, No. 09-CV-3512, 2010 WL 4883923 at *11 (N.D. Ill. Nov. 24, 2010) (quoting *Freeman v. Fairman,* 916 F. Supp. 786, 792 (N.D. Ill. 1996)) (cleaned up). Thus, the standard of care Will County Sheriff's Office owes to prisoners such as Couch is a duty of ordinary care, not medical expertise. *Warren*, 2010 WL 4883923 at *11. Medical malpractice is not apt here.

On the other hand, Couch has plausibly pleaded that Will County Sheriff's Office treated him negligently. The same facts that give rise to Couch's *Monell* claim against the Sheriff's Office support his claim that it was negligent. The Court accepts Couch's representation that "[i]t was both visibly apparent by his use of a colostomy bag and his exposed intestine, as well as apparent from Plaintiff's repeated reminders to Defendants, that he needed the surgery." [68] ¶ 51. It does not take a medical expert to see a man's exposed intestine and reliance on a colostomy bag and realize that he needs surgical intervention or, at the very least, to see a doctor. A reasonable jury could find Couch's medical need obvious enough that allowing him to see a doctor falls within Will County Sheriff's Office's duty of ordinary care. *See Lipsey v. United States*, No. 12-2100, 2013 WL 757652, at *4 (C.D. Ill. Jan. 2, 2013), *report and recommendation adopted,* No. 12-CV-2100, 2013 WL 270166 (C.D. Ill. Jan. 24, 2013)

18

(plaintiff's claim that defendants negligently transferred pregnant woman and accepted care of the woman and her infant without proper equipment or staffing to manage her care sounded in ordinary negligence, not medical malpractice); *see also Awalt*, 2012 WL 1161500 at *6 (plaintiff's claims based on defendant jailors' failure to heed her husband's pleas for medications he needed to control his epilepsy were not medical malpractice claims because they did not rest on a theory of unreasonable application of defendants' special expertise in medical care, but did invoke ordinary negligence).

Couch's need was particularly obvious to Will County Sheriff's Office because he had informed it of the medical advice of two doctors. [68] ¶ 24. Indeed, Couch made so many requests for medical care that Wellpath, with whom Will County Sheriff's Office had contracted for medical services, threatened to begin charging him for them. *Id.* ¶ 34. If Couch's pleas were not sufficient to alert Will County to Couch's medical needs, a judge made a statement that the Will County Facility must address them. *Id.* ¶ 26. These facts bolster Couch's claim that Will County Sheriff's Office breached a duty of care that any reasonable person would have fulfilled, even one who was not a medical professional.

Will County also raises an affirmative defense that the Sheriff's Office is immune from any claim of malpractice or negligence under the Illinois Tort Immunity Act, which provides that "[n]either a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or

19

facilities therein." 745 ILCS 10/4-103. Affirmative defenses are generally not proper grounds for granting Rule 12(b)(6) motions to dismiss, at a stage when courts test whether a complaint states a claim for relief, not whether that claim is vulnerable to defenses raised by the opposing party. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).[6] Even if the Court did take affirmative defenses into account at this stage, the case Will County Sheriff's Office proffers notes that while "a sheriff is immune from liability when he exercises the discretionary powers of his office, that liability does not extend to willful and wanton acts." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1045 (7th Cir. 1998). Based on Couch's allegations, the Court reasonably infers willfulness and wantonness from the Will County Sheriff's Office's repeated decision to ignore Couch's numerous pleas for medical care to treat his visible impairment.

Count IV is thus dismissed as to Will County Sheriff's Office while Count VI may continue.

### 2.  Wexford

Couch raises virtually the same claims of state law medical malpractice and, in the alternative, negligence against Wexford as he does against Will County Sheriff's Office. *See* [68] ¶¶ 74–90. Wexford first argues that it cannot be sued for medical malpractice because it is a corporation rather than a human medical

---

[6] The Court's consideration of Rule 12(b)(6) motions to dismiss is dictated by federal procedural rules. *See Hanna v. Plumer*, 380 U.S. 460, 473–74 (1965). Illinois state procedure differs and treats affirmative defenses under the Illinois Tort Immunity Act as "an affirmative matter properly considered in a section 2–619 motion to dismiss." *Abruzzo v. City of Park Ridge,* 231 Ill. 2d 324, 331, 898 N.E.2d 631, 636 (Ill. 2008).

provider. [74] at 11–12. In Illinois, hospitals, clinics, and other healthcare institutions can be proper defendants in medical malpractice suits under two theories: directly, when the institution owes the plaintiff an independent duty to review and supervise his medical care; or vicariously, when there is a principal-agent relationship between the institution and the provider accused of malpractice (giving rise to a theory of vicarious liability). *Magnini v. Centegra Health Sys.*, 2015 IL App (1st) 133451, ¶ 24, 34 N.E.3d 1115, 1121. Couch asserts a medical malpractice claim against Wexford under the first theory: that Wexford owed him an independent duty to supervise his medical care and protect him from unnecessary injury. [68] ¶ 78. Other judges in this District have sustained lawsuits for medical malpractice against Wexford under Illinois law under this theory. *See Sanchez v. Wexford Health Sources, Inc.*, No. 24 C 6139, 2026 WL 691871, at *7–8 (N.D. Ill. Mar. 12, 2026); *Gonzalez v. Wexford Health Sources, Inc.*, No. 15 CV 776, 2020 WL 6381361, at *3 (N.D. Ill. Oct. 30, 2020).[7]

But the inquiry as to whether Couch's complaint invokes ordinary negligence or medical malpractice does not end there. "Medical malpractice is a special species of negligence claims, but a claim for negligence is not a medical malpractice claim merely because it involves medical treatment or care." *Awalt*, 2012 WL 1161500 at *4. Courts applying Illinois law look beyond a plaintiff's characterization of their

---

[7] Wexford also argues that Couch's medical malpractice claim should be dismissed for failure to comply with Illinois' requirement of attaching an affidavit from a medical professional. The Supreme Court weighed in on this question after briefing on the motion to dismiss was complete, instructing federal courts that state laws requiring medical affidavits in malpractice suits conflict with the notice pleading standard set by Federal Rule of Civil Procedure 8, which takes precedence in federal court. *Berk v. Choy*, 607 U.S. 187, 194 (2026); *see also id.* at 197 ("That defendants cannot fit the affidavit requirement into the Federal Rules illustrates that it has no place there.").

21

claims to the underlying facts to determine whether a claim sounds in medical malpractice or ordinary negligence. *See Audia v. Briar Place, Ltd.*, No. 17 CV 6618, 2018 WL 1920082, at \*4 (N.D. Ill. Apr. 24, 2018). "In determining whether a complaint alleges healing arts malpractice or ordinary negligence, Illinois courts often consider three factors: '(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiff['s] case.'" *Id.* (quoting *Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill. App. 3d 906, 909, 823 N.E.2d 1055, 1058 (2005)).

The obviousness of Couch's need for medical care reveals that his claim against Wexford is for ordinary negligence, not medical malpractice. In a similar case, a prisoner, Awalt, and his wife informed jailers of Awalt's need for medication to control his epilepsy. *Awalt*, 2012 WL 1161500 at \*1. Jail staff disallowed Awalt from accessing the medication, even after repeated pleas from Awalt, his wife, and other inmates; their inaction led to Awalt's death. *Id.* The district court determined that Awalt had pleaded ordinary negligence, not medical malpractice, because "the alleged breach of a duty [did] not arise out of the unreasonable application of the Defendants'[] expertise in medicine, but rather out of the reckless disregard by all of the Defendants … of the probability that an injury would likely result from their course of conduct." *Id.* at \*4.

Like in *Awalt*, Couch's claim against Wexford does not arise from a medical professional applying expert skill or knowledge in a deficient way, but from Wexford's

22

failure to act on a medical need that was apparent to any layperson. Couch claims that his "need for the surgery was both serious and obvious to anyone who saw him in pain with a colostomy bag and exposed intestine" and that Wexford denied him treatment despite the obviousness of his need. [68] ¶¶ 68–69. Further, a doctor at Stateville agreed to Couch's request for the stoma reversal surgery, *id.* ¶ 42; the Court reasonably infers that Wexford was aware of that agreement, and thus was on notice of Couch's need, yet still refused to allow Couch to receive medical treatment after he was transferred to Robinson Correctional Center, as any ordinarily prudent person would have.

As set forth in his complaint, Couch's claim against Wexford could be evaluated by an ordinary juror and does not implicate medical judgment. That is reinforced by the fact that Couch's count asserting medical malpractice essentially copies his count asserting ordinary negligence. [68] ¶¶ 78–82; 87–90. Indeed, the two counts are brought as alternatives to one another. *Id.* However, Couch did set forth sufficient facts plausibly alleging that Wexford failed to meet its ordinary duty of care by ignoring his pleas for treatment. His claim therefore is one of ordinary negligence, not medical malpractice, and Wexford's motion to dismiss is granted as to Count V and denied as to Count VII.

C. **Claims Against Illinois Department of Corrections (Counts III, V, and VII)**

Couch voluntarily dismissed all claims against the IDOC without prejudice. [96], [97]. The Court therefore need not discuss the issues raised in IDOC's motion to

dismiss [87], which it denies as moot. *See Great Scott Nat'l Sales, Inc. v. Scott*, No. 24 C 2051, 2025 WL 1518053, at *2 (N.D. Ill. May 28, 2025).

## IV.    Conclusion

For the foregoing reasons, defendant IDOC's motion to dismiss is denied as moot. [87]. IDOC is dismissed from this case.

Defendants Will County Sheriff's Office and Wexford's motions to dismiss are granted in part and dismissed in part. [70], [73]. Defendant Will County Sheriff's Office's motion to dismiss is denied as to Counts I and VI and granted as to Count IV. Defendant Wexford's motion to dismiss is denied as to Counts III and VII and granted as to Count V.

Count IV is dismissed with prejudice as to Will County Sheriff's Office because Couch cannot change the fact that the Will County Sheriff's Office owes its inhabitants a duty of ordinary care, not a standard of care of an ordinarily careful medical professional. *See Jones*, 191 Ill. 2d at 295, 730 N.E.2d at 1130. The Court thus concludes that further amendment would be futile. *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (district courts have broad discretion to deny leave to amend where, among other things, amendment would be futile). Count IV may continue against the other defendants named.

Count V is dismissed without prejudice. Couch may reassert a claim for medical malpractice against Wexford in a later amended complaint if he can cure the deficiencies identified above while still complying with his obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain

25

from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

The parties are directed to confer, along with the other defendants, to set a discovery schedule and discuss the possibility of settlement. By 6/4/26, the parties are directed to file a status report setting forth a joint discovery plan and summarizing the status of any settlement discussions. The Court sets a status hearing for 6/11/26 at 9:30 a.m.

ENTER:

_____
Georgia N. Alexakis
United States District Judge

Date: 5/20/2026